**Lakle R. FOGLE. Sr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 8043.**

District of Columbia Court of Appeals.

Argued March 12, 1975.

Decided April 29, 1975.

James A. Caulfield, for appellant.

Gerard F. Treanor, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY and YEAGLEY, Associate Judges, and PAIR, Associate Judge, Retired.

PER CURIAM:

. Appellant was found guilty in a nonjury trial of one count of grand larceny for the theft of a 1969 Volkswagen bus (D.C.Code 1973, § 22–2201) and three counts of taking property (other automobiles) without right (D.C.Code 1973, § 22–1211). This appeal followed. For the reasons set out below, we affirm.

The undisputed background facts of this case show that appellant, who is in the towing business, had several arrangements and contracts with landlords and building managers throughout the District of Columbia whereby he assumed responsibility for removing reportedly wrecked, abandoned, and improperly parked vehicles from parking

lots. According to appellant, his modus operandi, under the blanket authority of the property owner, was to single out various vehicles for removal. He then allegedly placed a small card on the vehicles indicating that they would soon be removed. This "notice", however, contained no information which would permit the owner to contact the appellant. The only recourse for the owner was to contact the resident manager, whose name also was absent from the notice. However, since appellant did not check with the resident manager before removal, this probably would have been a futile gesture for the car owner. When the appellant returned, he would place the vehicle on a flatbed truck. The automobiles were stacked on top of each other doing substantial damage to the cars underneath. They were not stored, but were immediately hauled either to a used car lot for sale or to a shredder for scrap. In the case of the Volkswagen bus, appellant presented to the used car dealer a forged document by which appellant was purportedly authorized by the National Capital Housing Authority, an agency of the District of Columbia government, to tow the vehicle from an Authority parking lot.

I

With regard to the count of grand larceny, D.C.Code 1973, § 22–2201 provides that it is a crime for anyone to "feloniously take and carry away anything of value of the amount or value of $100 or upward . . . ." Appellant admitted that he took and carried away the vehicle and the evidence at trial showed that it was worth more than $100. However, appellant contended that there was insufficient evidence to establish that he possessed the requisite specific intent to steal the vehicle.

█ The requirement of a felonious intent, or the *animus furandi*, is well settled in our case law, *see, e. g.,* Mills v. United States, 97 U.S.App.D.C. 131, 228 F.2d 645 (1955); Ryan v. United States, 26 App.D.C. 74 (1905), and is the element which dis-

tinguishes larceny from the lesser included offense of taking property without right, D.C.Code 1973. § 22–1211; *cf.* Richardson v. United States, 131 U.S.App.D.C. 168, 170, 403 F.2d 574, 576 (1968). To find the accused guilty of a larceny, the court must find beyond a reasonable doubt that he had the specific intent to steal. Such intent depends upon his state of mind. *Cf.* Morissette v. United States, 342 U.S. 246, 72 S. Ct. 240, 96 L.Ed. 288 (1952).

The trial court found as fact that: (1) the car had valid tags at the time it was taken; (2) the resident manager did not authorize the defendant to remove any automobiles from the lot; (3) a forged authorization from the Housing Authority was used by the appellant in selling the vehicle; and (4) the appellant had sold the vehicle to a used car dealer, but when the rightful owner learned of it and contacted the used car dealer, the appellant, when notified, promptly repurchased the vehicle, and took it to a shredder at a junkyard.

█ The court rightly concluded that these facts established beyond a reasonable doubt that appellant had the necessary specific intent to commit larceny. The evidence amply supported the conclusion that appellant intended to take the property and to appropriate it to a use inconsistent with the owner's rights, knowing that he had no authority to do so. This is the quantum of proof necessary to sustain a conviction of larceny. Fredericks v. United States, D.C.App., 306 A.2d 268, 270 (1973); United States v. Johnson, 140 U.S.App.D.C. 54, 57, 433 F.2d 1160, 1163 (1970), and authorities cited therein at n. 18.

In addition, appellant's actions after the initial taking reflect on his specific intent to commit the larceny. Since "[t]he crime of larceny obviously continues as long as the asportation continues . . .", United States v. Barlow, 152 U.S.App.D.C. 336, 344, 470 F.2d 1245, 1253 (1972), the fact finder may consider the activities concerned in the asportation to determine the intent of

the accused. In the instant case, the specific intent of appellant to appropriate the property to his own use can be seen from his forging of the authorization form from the Housing Authority and his subsequent actions after being notified that the actual owner was attempting to regain possession of the vehicle. These facts illustrate the necessary felonious intent required to sustain a conviction of grand larceny. As such, a specific intent to steal was shown and appellant's conviction for grand larceny is affirmed.

## II

■ Appellant also asserted that he lacked any "general criminal intent" with regard to the counts of taking property without right since he alleged that he believed the property managers had authorized him to remove the automobiles. That the crime of taking property without right is a general rather than specific intent crime is without question. Harris v. District of Columbia, D.C.Mun.App., 132 A.2d 152, rev'd on other grounds, 102 U.S.App. D.C. 202, 151 F.2d 913 (1957); Richardson v. United States, 131 U.S.App.D.C. 168, 403 F.2d 574 (1968). Criminal intent has been defined as "the intention to do an act which constitutes the violation of the law, and does not necessarily involve an intent to violate the law . . . ." People v. Kuykendall, 134 Cal.App.2d 642, 645, 285 P.2d 996, 999 (1955). As the court said in Cooke v. United States, 107 U.S.App.D.C. 223, 225, 275 F.2d 887, 889 (1960), regarding a general intent crime: "All that is needed is an intent to commit the proscribed act."

The trial court found that appellant, in removing three other automobiles, believed that he had been authorized by the property managers to do so. The court found, and we agree, that the property managers did not have the authority to contract with appellant for the removal of the vehicles from their lots. As the judge ruled in his memorandum opinion, D.C. Code 1973, § 40–810 "gives the exclusive right to remove vehicles parked on private lots without the property owners consent to the local government. While the statute would allow the local government to contract for the service of someone like the [appellant], that is not the case at bar. Accordingly, . . . the defendant is Guilty of Taking Property Without Right, a general intent crime." Mem.Op. at 5.

The only exception which is allowed in the Code is, as the trial court accurately pointed out, if the vehicles constituted a nuisance as defined by D.C.Code 1973, § 5–504. The statute designates a nuisance as "any abandoned vehicles . . . insofar as they affect the public health, comfort, safety and welfare." Thus if the vehicles were abandoned, the property managers had the obligation to see to their removal. The trial court clearly articulated its findings as to the condition of the automobiles at the time appellant hauled them away:

> All four vehicles were parked in parking lots out of the stream of traffic. All damaged vehicles had valid license tags. All vehicles with dead tags were virtually undamaged. Nothing concerning these . . . vehicles could have led a person to reasonably regard them as abandoned. . . . [Mem.Op. at 3.]

■ We are bound by these fact determinations of the fact finder as they are supported by the evidence and thus find that appellant had no right to tow away these automobiles. He thus could have been found guilty of taking of property without right and his convictions must be affirmed.

Since there were no other appealable issues, the judgment below is

Affirmed.