**John W. RICHARDSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21049.**

United States Court of Appeals District of Columbia Circuit.

Argued April 19, 1968.

Decided June 19, 1968.

---

8. *Cf.* Bailey v. United States, *supra* note 5 (dissenting opinion of Fahy, J.).

Mr. Richard A. Fitzpatrick (appointed by this court), Washington, D. C., for appellant, Mr. Samuel J. L'Hommedieu, Jr. (appointed by this court), Washington, D. C., was on the brief for appellant.

Mr. Ronald D. West (appointed by this court), Washington, D. C., also entered an appearance for appellant.

Mr. James E. Kelley, Jr., Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Mr. John A. Terry, Asst. U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and TAMM, Circuit Judge.

EDGERTON, Senior Circuit Judge:

Appellant was charged with robbery (count one), assault with a dangerous weapon (count two), and carrying a dangerous weapon (count three). A jury found him guilty as charged on count one, guilty of simple assault on count two and not guilty on count three.

The complaining witness Snowden testified that appellant and another held him up at gunpoint and took $98 from his wallet. Appellant testified that Snowden, who had recently been convicted of a gambling offense, owed him a $270 gambling debt which he had several times unsuccessfully tried to collect. He admitted reaching into Snowden's wallet and removing $138 without his consent, but denied having a gun. His mother corroborated his story of the gambling debt and testified that Snowden was a known gambler.

The chief ground of this appeal is the trial court's denial of appellant's request for the following standard instruction:

> Evidence has been introduced that the defendant believed that he had a right to take the property he is alleged to have stolen.
>
> If a person takes the property of another, but does so in the good faith belief that he has a right to take the property, the specific intent essential to the crime of robbery is lacking.
>
> The Government must prove beyond a reasonable doubt that the defendant acted with the specific intent to steal. If you have a reasonable doubt whether or not the defendant acted with a specific intent to steal, you must find him not guilty.[1]

## I.

A defendant is not guilty of robbery unless he has a specific intent to take the property of another. Jackson v. United States, 121 U.S.App.D.C. 160, 348 F.2d 772 (1965). Viewing the evidence most favorably to the defendant, as we must where he appeals from the denial of a favorable instruction, be believed in good faith that he was entitled to the money. If so, he did not have that spe-

---

1. Instruction No. 117, Junior Bar Section of D.C. Bar Ass'n, Criminal Jury Instructions (1966). The court instructed generally on specific intent.

cific intent. We therefore find that the requested instruction should have been given.[2]

The government's position seems to be that no instruction on a claim of right is necessary unless the defendant had a legally enforceable right to the property he took. But specific intent depends upon a state of mind, not upon a legal fact. If the jury finds that the defendant believed himself entitled to the money, it cannot properly find that he had the requisite specific intent for robbery. Cf. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (An unfounded but genuine belief that the property taken had been abandoned negatives specific intent).

■ The government urges affirmance for policy reasons, claiming that a reversal of this robbery conviction would encourage violent takings and would frustrate the policy of the law that a successful gambler may not recover his winnings from the loser. But "The taking and carrying away of the property of another in the District of Columbia without right to do so" is a misdemeanor. D.C. Code (1967 ed.) § 22–1211. Since this section can be violated without specific intent, it provides a deterrent to self-help by a winning gambler without rejecting the principle that specific intent turns on the actor's state of mind and not upon an objective fact.

## II.

Appellant contends that the court should have instructed on the lesser include offenses of taking property without right and petit larceny.

■ A lesser included offense instruction is appropriate only where it is justified by the evidence. Burcham v. United States, 82 U.S.App.D.C. 283, 284, 163 F.2d 761, 762 (1947). We agree that

appellant was entitled to an instruction on taking property without right since from the evidence the jury could reasonably find that he lacked the requisite specific intent for robbery. However, having admitted that he took the money from Snowden's person without consent, appellant could not be guilty of petit larceny, which precludes a forceful taking. "Force" includes a physical taking of property from the person of another whether or not there is resistance. Jackson v. United States, 123 U.S.App.D.C. 276, 278, 359 F.2d 260, 262 (1966). Thus the trial court's refusal to instruct on petit larceny was not error.

Appellant does not contest his assault conviction in this appeal. We reverse his conviction of robbery.

Reversed.

TAMM, Circuit Judge (dissenting):

I disagree with the action of the majority in reversing the conviction of this appellant for the crime of robbery. The majority opinion bases its conclusion upon the statement that "[a] defendant is not guilty of robbery unless he has *a specific intent to take the property of another.*" (Emphasis supplied.) The majority opinion completely turns its back upon the facts of record in this case in that the jury unanimously found that this appellant did, as proved beyond a reasonable doubt, have a specific intent to take the property of the complaining witness. The majority opinion leans upon the declination of the trial judge to include in his charge to the jury defense counsel's request for a specific instruction relating to the right of a person to take property which he believed he had a right to take. A reading of the complete charge to the jury establishes that the substance of the defense counsel's request in this regard was repeatedly covered. Indicative of the majority's

2. Accord: State v. Steele, 150 Wash. 466, 273 P. 742 (1929). The majority rule in cases involving a forceful taking of money under color of a liquidated debt is that the requisite specific intent for robbery is lacking. See, *e. g.*, People v. Butler, 65 Cal.2d 569, 55 Cal.Rptr. 511, 421 P.2d 703 (Sup.Ct.1967); Butts v. Commonwealth, 145 Va. 800, 133 S.E. 764 (1926); cases collected in 46 A.L.R. 2d 1227.

complete disregard of the jury finding, I set out hereafter at some length excerpts from the learned and knowledgeable trial judge's charge to the jury upon the subject of the need for evidence of specific intent in order to establish an essential ground to convict for the crime of robbery.

After meticulously outlining to the jury various aspects of the law relating to the facts necessary to convict, the trial judge set forth the five elements necessary to constitute the crime of robbery (Tr. 307). The fifth element enumerated by the trial judge was "that the defendant took such property and *carried it away without right to do so, and with specific intent to steal it.*" (Emphasis supplied.) Thereafter the five elements were the subject of detailed and enlarged instruction to the jury, the judge emphasizing throughout that the possession must have been acquired by force or violence or by "putting the complaining witness in fear. * * *" (Tr. 308). In letter perfect phraseology when he returned to the fifth essential element of the crime of robbery, the trial judge reiterated: "To establish the fifth essential element of the offense, it is necessary that the property was so taken and carried away by the defendant, *without right to do so, and with specific intent to steal it.* There can be no robbery where the property is taken for a lawful purpose. At the time of taking and carrying the property away, the defendant *must have had the specific intent to deprive the complaining witness of his property and to convert and appropriate it to the use and benefit of the taker.*" (Emphasis supplied) (Tr. 309).

Although it would appear most logical that the elements of specific intent had been adequately covered by the above instructions, from an abundance of precaution in the light of appellant's version of the robbery, the trial judge again in commenting on the fifth essential element of the offense of robbery stated "it is necessary that the property was so taken and carried away by the defendant, without right to do so, and *with specific intent to steal it.*" (Emphasis supplied) (Tr. 315). Thereafter the court in detail instructed the jury as to the manner and means of proving intent (Tr. 316).

Acting upon these and other instructions the jury by its unanimous vote found this appellant guilty of the crime of robbery. It is inescapable from the verdict that they found that this appellant by force and violence and by putting in fear took from the complaining witness property of value, without any right to do so and *with specific intent to steal it.* I confess a complete inability to understand how the majority can rationalize a reversal of this conviction upon the ground that the appellant did not have a "specific intent to take the property of another." To reach this conclusion the majority must, and I regret to add, arbitrarily and capriciously, ignore completely the specific and affirmative finding of the jury on this point. The purpose of the criminal courts is fundamentally to protect organized society from the ravages of criminal conduct. It seems to me that action of the kind embodied in the majority opinion constitutes a complete perversion of that purpose and reduces the trial to an exercise solely for the exoneration of a guilty defendant, in which the welfare of society is completely ignored. It is unfortunate for the law abiding community that judicial visionaries must apply their well intended theories to obviously guilty felons.

I would affirm the conviction.