McLeese, Associate Judge,
concurring in the judgment in part and dissenting in part:
Although I otherwise concur in the judgment, I respectfully dissent from the court’s holding that the trial court committed reversible error by declining to instruct the jury on theft as a lesser-included offense of robbery. I agree .with the court’s framing of the issue: Mr. Gray was entitled to a lesser-included-offense ■ instruction if the jury could reasonably have found him guilty of theft but not robbery. Ante at 381-82. I disagree, however, with the court’s conclusion that the jury could reasonably have found Mr. Gray guilty only of theft based on doubt that Mr. Gray *392 took the victim’s property “by force or violence.” Ante at 383-87. In my view, the jury in this case could not reasonably have found Mr. Gray guilty of theft without also finding him guilty of robbery. I therefore would affirm Mr. Gray’s robbery conviction.
I.
At one point, the court holds that we must address the lesser-included-offense issue in light of the instructions actually given to the jury, rather than in light of legal principles as to which the jury was not instructed. Ante at 385-86. Specifically, the court acknowledges that robbery can be committed “by sudden or stealthy seizure or snatching.” Ante at 385; accord D.C. Code § 22-2801 (2016 Supp.). Because the trial court declined to instruct the jury on that type of robbery, however, the court treats as “immaterial” the question whether a jury that found Mr. Gray guilty of theft would also reasonably have to find Mr. Gray guilty of robbery by sudden or stealthy seizure or snatching. Ante at 382 n.13, 385-86.
In my view, the trial court erred by declining to instruct the jury on the theory of sudden or stealthy seizure or snatching. The trial court’s stated reason was that this case did not involve “a sudden and stealthy seizure or snatching” (emphasis added). Although I agree that Mr. Gray’s actions were not stealthy, the robbery statute applies to “sudden or stealthy” seizures or snatchings. D.C. Code § 22-2801 (emphasis added). Thus, if a reasonable jury could have viewed Mr. Gray’s seizure of the victim’s wallet as sudden, then the trial court ought to have instructed the jury on the theory of sudden or stealthy seizure or snatching. It seems to me that Mr. Gray’s seizure of the victim’s wallet, as depicted in the videotape of the incident, could quite plausibly be viewed as sudden. In fact, I think it very implausible that a reasonable jury would take any other view. For that reason alone, I would conclude that no reasonable jury, properly instructed, could have found Mr. Gray guilty of theft but not guilty of robbery by sudden seizure. See generally Turner v. United States, 57 App.D.C. 39, 40, 16 F.2d 535, 536 (1926) (in discussing robbery by sudden or stealthy seizure or snatching, court states that “the requirement for force is satisfied within the sense of the statute by an actual physical taking of the property from the person of another, even though without his knowledge and consent, and though the property be unattached to his person”).
The court does not address this question, instead holding that our focus must be limited to the instructions given to the jury. Ante at 385-86. Although the court cites no direct support, that holding seems to me to be correct, at least where (as here) the defendant did not object to the pertinent instructions. We have said that whether a defendant charged with robbery is entitled to a lesser-included-offense instruction turns on “whether the evidence presented limited the rational conclusion of the fact-finder to either acquittal or conviction on robbery.” Leak v. United States, 757 A.2d 739, 741 (D.C. 2000). Because a jury could not rationally come to a conclusion on the basis of principles about which the jury was not informed, I agree with the court that we should resolve this case based solely on the instructions given to the jury.
The court, however, does not consistently apply its holding that our focus must be on the instructions given to the jury rather than on legal principles not communicated to the jury. Specifically, the court relies on the idea that Mr. Gray could be found guilty of robbery only if he either intended or was aware that his use of force or *393 violence would aid in the taking of the victim’s property. Ante at 383-87. Setting aside for the moment whether the robbery statute actually requires proof of this additional mens rea, the instructions to the jury in this case did not communicate any such principle. By the court’s own reasoning, that principle therefore is “immaterial” to whether Mr. Gray was entitled to a lesser-included-offense instruction.
In pertinent part, the robbery instruction in this case was as follows:
The elements of the offense of robbery, each of which the Government must prove beyond a reasonable doubt, are that: Number one, that the defendant took property from Rosalba Hernandez. Number two, he took the property from the immediate actual possession of Ro-salba Hernandez or from Rosalba Hernandez’s person. [Number three, he] did so against the will of Rosalba Hernandez. Number four, that he used force or violence to take the property by using actual physical force or violence by putting Rosalba Hernandez in fear. Number five, that he carried the property away. Number six, he took the property without right to it and intending to steal it. And, number seven, the property had some value.
[[Image here]]
Putting Rosalba Hernandez in fear without using actual force or physical force can satisfy the requirement of force or violence if the circumstances, such as threats, by words or gestures, would in common experience create a reasonable fear of danger and cause a person to give up his or her money in order to avoid physical harm.
[[Image here]]
The Government must establish that the defendant had no right to take the property and that he intended to steal it.... It is necessary that the defendant intended to deprive Rosalba Hernandez of her property and to take it for his own use.
Under these instructions, the jury could not find Mr. Gray guilty of robbery unless it found that Mr. Gray “used force or violence to take the property.” The instructions also indicate, however, that “putting [the victim] in fear” could meet the “force or violence” requirement if the defendant’s conduct would be sufficiently frightening to a reasonable person. The instructions mention only an intent to steal, and they certainly do not communicate the asserted additional mens rea requirement relied upon by the court: that Mr. Gray must have intended or been aware that his use of force or violence would aid in the taking of the victim’s property.
In a footnote, the court takes the view that the robbery instruction in this case can reasonably be understood to require proof not only that Mr. Gray intentionally used force or violence but also that he intended or was aware that his use of force or violence would aid in the taking of the victim’s property. Ante at 385 n.17. I disagree. In isolation, the phrase “used force or violence” does not indicate whether some form of intent is required beyond the intent to commit the acts that constitute the force and violence at issue. Cf., e.g., United States v. Pena, 161 F.Supp.3d 268, 283 (S.D.N.Y. 2016) (robbery by “intentionally perform[ing] objectively intimidating actions in the course of unlawfully taking the property of another” would qualify as crime of violence under 18 U.S.C. § 924(c)(3)(A) (requiring that offense “has as an element the use, attempted use, or threatened use of physical force against the person or property of another”)). For example, consider a case in which the defendant intentionally punches *394 the victim in the face, the victim falls to the ground, the defendant reaches into the victim’s pocket and takes the victim’s wallet, and the defendant runs away with the victim’s wallet. As a matter of ordinary language, it would be natural to say that the defendant used force to take the victim’s wallet. That seems to me true even if the defendant truthfully claimed that the punch in the face was not intended to aid in the taking of the victim’s property and that the defendant did not realize that the punch in the face in fact aided in the taking of the victim’s property.
The court cites authority for the principle that “use” of physical force “most naturally suggests a higher degree of intent than negligent or merely accidental conduct.” Ante at 384; see Leocal v. Ashcroft, 543 U.S. 1, 9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). I do not disagree, but that is not the point of dispute in this case. In finding Mr. Gray guilty of assault, the jury found that Mr. Gray “voluntarily and on purpose” deployed force or violence against the victims. In the court’s view, the robbery instructions in this case are reasonably read to require more: that Mr. Gray’s intentionally assaultive acts were taken with the intent or awareness that they would aid in the taking of the victim’s property. Leocal does not support a conclusion that the word “used” in the robbery instruction in this case would have communicated to a reasonable juror that Mr. Gray should be acquitted unless he not only intentionally used force that helped him to take the victim’s property but also intended or was aware that the force he intentionally used had that effeet.
Similarly unpersuasive is the court’s reliance on Webster’s Third New International Dictionary. Ante at 385 n.17. That dictionary has numerous definitions of the verb “use.” Webster’s Third New International Dictionary 2523-24 (2002). The court, however, cites none of those definitions. Rather, the court cites a postscript discussing “use” and its synonyms. Id. at 2524. The first non-archaic definition of “use” is “to put into action or service,” id. at 2523, which does not indicate that “use” means not only conscious action but also an awareness of the effects of that action. Nor is such an interpretation of “use” clearly supported by the subsequent discussion of “use” and its synonyms upon which the court relies. In the present case, for example, whether he did so consciously or not, Mr. Gray in fact took advantage of his intentionally assaultive acts to take the victim’s property, thereby “putting [his force or violence] to service.” Id. at 2524.
The Supreme Court has described the term “use” as “elastic,” and has emphasized that the term must be understood in context. Leocal, 543 U.S. at 9, 125 S.Ct. 377. Whatever ambiguity the phrase “used force or violence” might have in isolation is resolved in this case by the instruction that “putting the victim in fear” can “satisfy the requirement of force or violence” if Mr. Gray’s actions were objectively threatening enough. In light of that instruction, the jury in this case would have had no reason to think that Mr. Gray should be acquitted of robbery unless the jury found not only that Mr. Gray engaged in intentionally assaultive and threatening conduct that aided in the taking of the victim’s property, but also that he did so intending or with an awareness that his assaultive and threatening conduct had that effect.
As I read the instructions in this case, the “force or violence” requirement was satisfied if Mr. Gray used force or violence during the robbery and that use of force in fact aided in the taking of the victim’s property. Given the instructions and the factual circumstances of this case, a jury that found Mr. Gray guilty of theft and assault could not reasonably have acquit *395 ted Mr. Gray of robbery. The videotape of the incident shows that Mr. Gray used force and violence against the victim, and the jury’s assault verdict confirms that conclusion. Moreover, I see no reasonable basis upon which a jury might doubt that Mr. Gray’s use of force or violence aided in the taking of the victim’s property. I therefore would affirm Mr, Gray’s robbery conviction.
II.
I return now to the issue previously set aside: whether the robbery statute requires that the defendant have intended or been aware that the defendant’s force or violence would aid in the taking of the victim’s property. For the reasons I have explained, I do'not think that we need to resolve that issue in order to decide this case. The court does decide the issue, however, and I therefore address it. I would hold that the robbery statute does not require proof that the defendant have intended or been aware that the use of force or violence would aid in the taking of the victim’s property.
First, the language of the robbery statute points against the court’s holding. That statute provides that “[wjhoever, by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery.” D.C. Code § 22-2801. We have appropriately read into the statute a requirement that the defendant have acted with the specific intent to take the property of another. United States v. Owens, 332 A.2d 752, 753 (D.C. 1975) (“[Ajlthough the local robbery statute does not mention specific intent, it must be read as referring to the common law crime of robbery, a necessary element of which is specific intent to take the property of another.”) (citations and internal quotation marks omitted). With respect to the requirement of force or violence, the statute by its terms requires that the taking be “by force or violence.” D.C. Code § 22-2801. The statute thus does not explicitly impose a requirement that the force or violence have been intentionally deployed, much less that the defendant have intended or been aware that the force or violence would aid the taking. And the term “by” does not suggest an additional mens rea requirement. See United States v. Pickar, 616 F.3d 821, 825 (8th Cir. 2010) (in interpreting federal bank-robbery statute, which requires that defendant took money “by force and violence, or by intimidation,” court holds that “The intimidation element of bank robbery is satisfied if an ordinary person in the bank teller’s position could reasonably infer a threat of bodily harm from the bank robber’s words and actions. Intimidation is measured under an objective standard, and, therefore, whether the bank robber intended to intimidate the bank teller is irrelevant.”) (citation omitted); Montgomery v. State, 206 Md.App. 357, 47 A.3d 1140, 1157 (2012) (in discussing elements of robbery, court holds that, “The determination of whether there has been an intimidation should be guided by an objective test focusing on the accused’s actions. ‘By intimidation’ means in such a way that would put an ordinary, reasonable person in fear of bodily harm.”) (brackets, ellipses, and internal quotation marks omitted).
According to the court, it would be “unusual to say that a person took something ‘by force or violence’ if that person had no awareness that the force or violence facilitated the taking.” Ante at 384. I do not agree. Consider again the hypothetical defendant who punches the victim in the face, knocking the victim to the ground, and then takes the victim’s wallet. It *396 seems quite natural to describe that defendant as having taken the victim’s wallet by force, whether or not the defendant intended or was aware that the punch in the face would aid in the taking of the victim’s property. More generally, we often use the word “by” without implying a mental state. For example, we would say that an unconscious patient traveled by helicopter to the hospital, even though the patient was not aware of what was happening. In support of its view that “by” ordinarily implies a mental state, the court cites two dictionary definitions of “by,” but neither definition implies any mental state. Ante at 384. The court itself appears to acknowledge that one of the definitions it cites — defining “by” as “in consequence of’ or “as a result of’ — contradicts the court’s suggestion that “by” in ordinary language implies a mental state. Id. Moreover, the court cites no decision from this or any other court interpreting “by” to imply a mental state. The court also does not address the contrary decisions cited in the preceding paragraph, which take the opposite view in the context of federal and state robbery statutes. In sum, the pertinent materials undermine rather than support the court’s statement that its holding “is more consistent ... with the ordinary meaning of the [statutory] language.” Ante at 384.
Second, binding authority points against the court’s holding in this case. As the court’s opinion reflects, our prior decisions variously describe the elements of robbery. Ante at 382-83. Focusing on the “force and violence” requirement, we have sometimes used the term “by,” which is the term that appears in the statute, Williams v. United States, 113 A.3d 554, 560-61 (D.C. 2015), and we have sometimes indicated that the defendant must have “us[ed] force or violence,” Johnson v. United States, 756 A.2d 458, 462 (D.C. 2000). We have also said that if the defendant’s force or violence consists of putting the victim in fear, then “the government must establish some menacing conduct of the accused and his purposeful design to engender fear in the victim.” Williams, 113 A.3d at 561 (ellipses, brackets, and internal quotation marks omitted). Our cases leave me uncertain as to whether a defendant must always have intentionally deployed force or violence in order to be guilty of robbery. But none of our cases support imposition of a requirement that the defendant have intended or been aware that intentionally deployed force or violence would aid in the taking of the victim’s property.
Rather, our cases are to the contrary. For example, it was long ago settled in this jurisdiction that a defendant can be convicted of robbery even if the defendant’s intent to steal arose after the assault on the victim was completed. Carey v, United States, 111 U.S.App.D.C. 300, 304-05, 296 F.2d 422, 426-27 (1961). The Carey court cited with approval a line of cases holding that “If, as the result of a quarrel, a fight occurs, in which one of the parties is overcome, and the other then, without having formed the intention before the fight began, takes the money of the vanquished one, the offense committed is robbery.” Id. at 304, 296 F.2d at 426 (internal quotation marks omitted). Thus, the court explained, “larceny from the person” is classified as robbery under the law of the District of Columbia. Id. at 306, 296 F.2d at 427. Carey’s reasoning is inconsistent with a conclusion that robbery requires the defendant to have intended or been aware that the use of force or violence would aid in the taking of the victim’s property. More recently, we have said that “any taking” from the “immediate actual possession” of the victim “is a robbery — not simply larceny.” Leak, 757 A.2d at 742-43. See also Richardson v. United States, 131 *397 U.S.App.D.C. 168, 170, 403 F.2d 574, 576 (1968) (holding that defendant was not entitled to have jury instructed on larceny as lesser-included offense of robbery, because he forcefully took property from person of victim).
The court suggests that the decisions just cited are limited to sudden or stealthy seizures or snatchings. Ante at 384-87. I do not agree with the court’s reading of those cases, particularly Richardson, which makes no reference at all to sudden or stealthy seizures or snatchings. The court speculates that Richardson in fact may have involved a stealthy seizure, ante at 386-87 n.18, but I see no basis in Richardson for that speculation. To the contrary, it appears to have been undisputed in Richardson that the defendant took money from the victim’s person openly, and the factual dispute was whether the defendant used a gun to do so. Richardson, 131 U.S.App.D.C. at 169, 403 F.2d at 575. The court also points out that the defendant in Richardson took the victim’s property from the victim’s person, whereas Mr. Gray took the victim’s property from a nearby counter. Ante at 386-87 n.18. The court does not explain, however, why it would make sense to impose different mens rea requirements based on that distinction.
Notwithstanding the foregoing authority, the court states that its “interpretation is more consistent with this court’s case law.” Ante at 384. In support of that statement, the court makes a single point: in articulating the “force or violence” element, some of our cases replace the statutory term “by” with “using” or “accomplished by.” Id. at 384. According to the court, that “suggest[s] that we understood the statute to require proof of some sort of purposeful employment or at least knowing exploitation of the force or violence.” Id. at 384. I see no basis for the court’s speculation. To the contrary, it appears that our shifting terminology, which we have never explained, instead reflects an unexamined assumption that the minor differences in wording have no substantive significance. In that regard, I note that our most recent statement of the elements of robbery uses the statutory term. See Williams, 113 A.3d at 560 (“The elements of robbery are: ... a felonious taking, ... from the person of another or in his presence, ... against his will, ... by violence or by putting him in fear .,..”) (emphasis added; internal quotation marks omitted). In my view, the court errs by giving greater weight to speculation about unexplained variations in the wording of our opinions than to clear and considered statements in several of our opinions directly contradicting the approach the court adopts.
Third, in light of the prior decisions in this jurisdiction, it should not be surprising that — like the instructions given to the jury in this case — the Standard Jury Instructions for robbery do not reflect the additional mens rea requirement imposed by the court today. Rather, the only mens rea mentioned in the standard robbery instruction is the intent to steal. Criminal Jury Instructions for the District of Columbia, No. 4.300 (5th ed. 2016). As to “force or violence,” the standard instruction requires only that the defendant “used force or violence to take the property,” and the standard instruction further explains that “[u]sing actual force or physical violence ... so as to ... prevent resistance satisfies the requirement of force or violence.” Id.
Fourth, the court does not dispute that a defendant is guilty of robbery, without any further mens rea requirement beyond the intent to steal, if the defendant suddenly or stealthily seizes or snatches property from the victim’s actual possession. (As I have explained, in my view that is what the *398 evidence and the jury’s verdict establish Mr. Gray did in this case.) It seems to me that the same should be true where the defendant commits the robbery through non-sudden seizure. In other words, I do not see why it should matter whether Mr. Gray intended or even realized that his assaultive conduct would aid in the taking of the victim’s property. The evidence and the jury’s verdict establish that Mr. Gray assaulted the victim, that he almost immediately thereafter seized her wallet from her actual possession, that he walked away with her money, and that he intended to steal her money. In my view, that conduct constitutes robbery under the law of the District of Columbia.
Finally, the substantial weight of authority in other jurisdictions appears to contradict the additional mens rea requirement that the court imposes upon our robbery statute. See, e,g., Allen v. State, 158 Md.App. 194, 857 A.2d 101, 129 (2004) (“[R]ob-bery does not require that the defendant’s violence-or-intimidation acts be done for the very purpose of the taking of the victim’s property. Rather, it is enough that the defendant takes advantage of a situation which he created for some other purpose .... [S]o long as the force precedes the taking, the intent to steal need not coincide with the force.... [I]t is sufficient if there be force followed by a taking with intent to steal as part of the same general occurrence or episode.”) (brackets, citations, and internal quotation marks omitted); State v. Mason, 403 So.2d 701, 704 (La. 1981) (“In addition, most jurisdictions have not required that the defendant’s acts of violence or intimidation be done for the very purpose of taking the victim’s property; rather, it is enough that he takes advantage of a situation which resulted from the prior use of force or intimidation.”); see generally 3 Wayne R. LaFave, Substantive Criminal Law § 20.3(e), at 191-93 (2d ed. 2016) (“[D]oes robbery require that the defendant’s violence-or-intimidation acts be done for the very purpose of taking the victim’s property, or is it enough that he takes advantage of a situation which he created for some other purpose? The great weight of authority in the earlier cases favors the latter view, holding that under the circumstances it is robbery ... ”; although some modern statutes contain language supporting contrary conclusion, statutes “which say that the taking must be by force ... certainly lend themselves to interpretation in accordance with the traditional view that these facts constitute robbery.”).
The court states that these illustrative out-of-jurisdiction authorities “cannot mean” to impose robbery liability on all defendants whose intentional use of force or violence in fact aids in the taking of the victim’s property. Ante at 384. Rather, according to the court, these authorities must be understood to require that the defendant is at least consciously taking advantage of the force or violence used against the victim. Id. None of the cited authorities explicitly state that whether the defendant “took advantage” of a prior use of force turns on a subjective inquiry into whether the defendant intended or was aware that the use of force operated to aid in the taking of the victim’s property, as opposed to an objective inquiry into whether the defendant’s use of force in fact aided in the taking of the victim’s property. To the contrary, each of the cited decisions analyzes the relevant issue in objective terms. See, e.g., Pickar, 616 F.3d at 825 (objective standard applies in determining whether defendant took property “by intimidation” within meaning of federal bank-robbery statute); Montgomery, 47 A.3d at 1157 (objective standard applies in determining whether defendant took property “by intimidation” within meaning of Maryland robbery statute); Al *399 len, 857 A.2d at 129 ( [Sjo long as the force precedes the taking, the intent to steal need not coincide with the force.... [I]t is sufficient if there be force followed by a taking with intent to steal as part of the same general occurrence or episode.”) (brackets, citation, and internal quotation marks omitted); Mason, 403 So.2d at 704 (framing question as whether “the theft [was] accomplished as a result of the defendant’s prior acts of aggression”).
At bottom, this case strikes me as comparable to Dublin v. United States, 388 A.2d 461 (D.C. 1978), in which we upheld a trial court’s refusal to instruct the jury on larceny as a lesser-included offense of robbery. In Dublin, the defendant was a customer who was seated at the counter in a restaurant. Id. at 462. He kept reaching over the counter in an attempt to touch the victim, who was working as a waitress. Id. After most of the other customers left, he suddenly tried to reach over the counter, demanded that the victim give him the money in the cash register, and instructed the victim not to look at him. Id. The victim was frightened and backed away from the cash register. Id, The defendant then removed money from the cash register and left. Id. In upholding the trial court’s refusal to give a lesser-included offense instruction on larceny, we stated that the defendant “concede[d], as he must,” that he had failed to create a factual dispute as to whether his conduct put the victim in fear, so as to meet the “force or violence” requirement of robbery. Id. at 464. If the record in Dublin precluded a factual dispute about whether the victim had been put in fear, the same is true in the current ease. In Dublin, the defendant’s frightening conduct consisted of attempts to touch the victim, a demand for money, and a command that the victim refrain from looking at him. In the present case, the defendant’s frightening conduct went much further, involving actual assaults upon the victim and others in the store.
The court tries to distinguish Dublin in two ways, ante at 387, but in my view neither proposed distinction is persuasive. First, it is true that the court in Dublin rejected the argument that the government was required to prove that the defendant’s conduct increased the victim’s fear beyond the level of fear that the victim otherwise would have felt. 388 A.2d at 464. But that discussion does not detract from the court’s earlier conclusion that the defendant properly conceded that the circumstances did not raise a factual dispute as to whether the victim had been put in fear at the time of the robbery. Second, the court in this case states that the acts in Dublin were “threatening in and of themselves,” whereas “Mr. Gray’s aggressive and threatening conduct all occurred before or after the theft.” Ante at 387. The court does not explain, however, how the attempted touchings and statements in Dublin were more “threatening in and of themselves” than the actual assaults in the present case. It seems to me that the opposite is true. Moreover, this case and Dublin are quite comparable in the temporal relationship between the threatening conduct and the actual taking of money. In both cases, the defendant engaged in threatening conduct just before seizing money from the actual immediate possession of the victim. I thus see no meaningful distinction between this case and Dublin.
For the foregoing reasons, I would affirm Mr. Gray’s robbery conviction. I respectfully dissent from the court’s contrary holding.